661 So.2d 370 (1995)
Ann COLE, Appellant,
v.
John J. ROBERTS, Jr., Appellee.
John J. ROBERTS, Jr., Appellant/Cross-Appellee,
v.
Ann COLE, Appellee/Cross-Appellant.
Nos. 94-1678, 94-3228.
District Court of Appeal of Florida, Fourth District.
October 11, 1995.
*371 Monica I. Salis of Monica I. Salis, P.A., Fort Lauderdale, for Ann Cole.
Stuart E. Soff of Lavalle, Brown, Ronan & Soff, P.A., Boca Raton, for John J. Roberts, Jr.
POLEN, Judge.
The former wife appeals and the former husband cross-appeals a judgment for dissolution of a six-year marriage which produced no children, and was the third marriage for each of the parties. The former wife objects to the distribution of marital assets, while the consolidated cross-appeal is directed to the former wife's attorney's fees. We reverse the final judgment, except for the dissolution of the marriage, and remand for further proceedings. Appellant raises three main issues on appeal, all of which have merit.
Appellant first contends that the trial court erred when it failed to award her any portion of the household contents, including her premarital assets, in the absence of any evidence or testimony refuting her entitlement to such property. Appellant is correct.
Section 61.075(1), Florida Statutes (1991), provides that "the Court shall set apart to each spouse that spouse's nonmarital assets and liabilities" and section 61.075(5)(b) (1991) defines nonmarital assets as "1. Assets acquired ... by either party prior to the marriage... ." As nonmarital assets, the wife's premarital property is not subject to equitable distribution except to the extent its value has been enhanced by marital labor or funds. Knecht v. Knecht, 629 So.2d 883, 886 (Fla. 3d DCA 1993). Here, the husband did not offer any testimony to contradict or rebut the wife's identification of, or entitlement to, her premarital assets. Nor did he offer any testimony or evidence that the value of such property had been enhanced by marital labor or funds. Thus we find that she should be awarded all of her own furnishings, personal *372 papers, and other effects set forth on Exhibit "1." Additionally appellant is entitled to fifty (50%) percent of the assets listed on Exhibit "2," which consists of all household contents purchased by the parties during the marriage.
Next, appellant contends that the trial court's equitable distribution is flawed because the final judgment completely fails to mention, and therefore fails to value or allocate, the following: (a) the husband's IRA/401K; (b) the condominium in Boca Raton; (c) the husband's IBM pension; and (d) the wife's jewelry.
There is merit to the former wife's contention that, pursuant to sections 61.075(3)(a) and (b), the final judgment should have specifically addressed, by factual findings, whether these assets or any part of these assets are marital or nonmarital. Schachter v. Schachter, 610 So.2d 730 (Fla. 4th DCA 1993). As we held in Keaton v. Keaton, 634 So.2d 798, 799 (Fla. 4th DCA 1994), "[w]ithout specific findings as to the value of marital assets, meaningful appellate review is impossible" and "[f]ailure to follow that statutory language is reversible error."

(A) THE HUSBAND'S IRA/401K:
Appellant is correct that even if, as appellee contends, only a portion of appellee's 401K is likely to have accrued during this marriage, absent specific findings of fact, it is impossible to know what the trial court intended. Reversal is required to address this asset.

(B) THE CONDOMINIUM IN BOCA RATON:
Regarding the Boca Raton condominium, in which appellee's prior wife (not appellant) and two grown daughters reside, we agree with appellant that the trial court erred in failing to identify the enhancement of the husband's nonmarital asset, and to equitably distribute, to the wife, one-half of the amount of marital funds used to reduce the mortgage. In the instant case, the husband did not contradict the wife's testimony that the mortgage payments on the condominium were paid by him, from marital funds, during the marriage. See Straley v. Frank, 612 So.2d 610, 612 (Fla. 2d DCA 1992), rev. denied, 624 So.2d 265 (1993). Here, as in Straley, the trial court should debit the distribution of assets to the husband in the amount of one-half of the marital funds contributed towards reducing the mortgage debt on the condominium. Furthermore, since the money for mortgage payments came out of marital funds, the wife's entitlement should be independent of any contribution of labor toward the enhancement of this asset. See Watford v. Watford, 605 So.2d 1313, 1314 (Fla. 4th DCA 1992).

(C) THE HUSBAND'S IBM PENSION:
Perhaps the most problematic of the trial court's findings is its unusual treatment of the husband's pension. Appellant contends, and we agree, that the trial court erred as a matter of law in failing to distribute any interest whatsoever in the marital portion of the husband's IBM pension. In the instant case, the pension was not distributed as either property or as a source of support. The question of whether a spouse's entitlement to a pension or retirement benefit is a marital asset, for purposes of equitably distributing marital property, must be considered. Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986). In addition, to the extent that they result from employment time after marriage and before commencement of a matrimonial action, those benefits are contract rights of value. Id. However, without a determination of the pension's value (which is absent at bar), it is virtually impossible for the court to determine whether the disposition of the pension (or lack thereof) was equitable. Haydu v. Haydu, 591 So.2d 655 (Fla. 1st DCA 1991).
In DeLoach v. DeLoach, 590 So.2d 956 (Fla. 1st DCA 1991), the trial court held that an interest in a pension plan is a "contractual right," and specifically drew a distinction between a contract right and an "expectancy." Here, appellant is quite correct that she appears to have neither. In addition, the trial court appears to have factored the wife's "expectancy" interest into its determination to deny her any alimony, thereby compounding the error, since such "expectancy" interest *373 would come into being only upon the death of the husband. Furthermore, there has been no testimony as to the ramifications, if any, to the appellant's rights as to the pension plan in the event the appellee should remarry, and then die prior to appellant. Pursuant to Moon v. Moon, 594 So.2d 819, 822 (Fla. 1st DCA 1992), since the record in this case is incomplete, the parties must on remand introduce further evidence.

(D) THE WIFE'S JEWELRY:
As represented by the parties in their briefs, there appears to be conflicting testimony as to the appraised value of the jewelry, as to what was actually sold, and for what amount. Where distribution of marital property is at issue, it is essential that the valuations are properly made. Carroll v. Carroll, 471 So.2d 1358, 1360 (Fla. 3d DCA), rev. denied, 482 So.2d 347 (Fla. 1985).
Finally, we find that the trial court erred in failing to equally distribute the marital home, after allowing for premarital contributions. The initial down payment of $10,000.00 was made with the wife's premarital funds, and the husband contributed $10,000.00 to cover closing costs and other items. Thereafter, the source of the funds utilized for the mortgage payoff represents, at least in part, marital property as income earned during the marriage. The funds used to pay off the mortgage, including the ITO payment of $120,000.00, were purely marital assets. The funds were commingled when they were deposited in the IBM Credit Union checking account used by the parties throughout the marriage to pay all of their marital expenses. In Brotman v. Brotman, 528 So.2d 550 (Fla. 4th DCA 1988), we held that a husband's severance pay and earned vacation pay (even when received after the parties are separated) are assets acquired during the marriage. We agree with appellant that it is inconsistent for the wife to be responsible for executing a tax return acknowledging joint tax liability for the ITO income while preventing her from enjoying the joint benefit of said income.
Thus, as there appears to be merit to the numerous issues herein disputed, and because the record is insufficient to allow determination of whether the trial court equitably distributed marital assets and liabilities, we vacate this portion of the award and remand for further consideration in light of the principles stated here.

(E) CONSOLIDATED CROSS-APPEAL ON ATTORNEY'S FEES:
Both the appellant and the appellee appeal the attorney's fees order, albeit for different reasons. The husband disputes the wife's entitlement to attorney's fees and seeks remand of the specific factual findings. It appears that, here, the trial court erred by failing to make the specific factual findings required by Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). See also Carlson v. Carlson, 639 So.2d 1094 (Fla. 4th DCA 1994).
In addition, there is merit to the wife's argument that the trial court erred when it determined, as reasonable, her entitlement to fees of $13,559.30; then, without explanation, required the husband to pay only $7,593.21, thereby reducing the husband's responsibility to only 56% of the total award. See Stewart v. Stewart, 534 So.2d 807 (Fla. 1st DCA 1988) (factual findings must support the award of partial fees). Here, we find no error as to the wife's entitlement or amount of her fees. Nevertheless, we remand to the trial court with instructions for it to set forth findings of fact as to the basis of the 56/44 percentage split.
Finally, we pause to comment on the fact that the husband's attorney acknowledged that the trial court gave both attorneys an opportunity to prepare a proposed order. Therefore, it was incumbent upon both attorneys to bring to the judge's attention the lack of evidence sufficient to make an informed decision. Thus, the husband is not entirely blameless regarding the situation before this court today.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS HOLDING.
STEVENSON, J., and SCHAPIRO, SHELDON, Associate Judge, concur.