NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MICHELLE SOMASCA,                                )
                                                 )
            Appellant,                           )
                                                 )
v.                                               )      Case No.  2D14-2822
                                                 )
ROBERT SOMASCA,                                  )
                                                 )
            Appellee.                            )
                                                 )
_____ )

Opinion filed July 31, 2015.

Appeal from the Circuit Court for Lee
County; John S. Carlin, Judge.

P. Brandon Perkins and Kristen D. Perkins
of Rogers Towers P.A., Fort Myers; and
Brett C. Powell and Alexander Brockmeyer
of The Powell Law Firm, P.A., Fort Myers,
for Appellant.

Katheryn E. Smith Calvo of Calvo &
Calvo, Fort Myers, for Appellee.


WALLACE, Judge.

            Michelle Somasca (the Wife) appeals the final judgment that dissolved her

marriage to Robert Somasca (the Husband).  The Wife raises three issues.  First, she

challenges the trial court's failure to treat as a marital asset the reduction in the amount

of the mortgage on the Husband's nonmarital property that was paid with marital funds.

Second, the Wife argues that the trial court erred in failing to find that the Husband made a gift to her of one-half of the proceeds of the sale of his nonmarital property when he deposited the funds into a joint account for a brief period. Third, the Wife contends that the trial court erred in treating the income tax obligation attributable to the conversion of the Husband's nonmarital conventional IRA into a Roth IRA as a marital liability rather than as the Husband's nonmarital obligation. There is no cross-appeal. We find merit in the Wife's first argument. The Wife's second and third arguments are without merit and do not warrant further discussion. We affirm in part and reverse in part.

## I. THE FACTS

The parties were married in September 2007. They had no children. The parties separated in April 2012, and the Husband filed a petition for dissolution of marriage on September 7, 2012. At the time of the final hearing, the Husband was sixty-nine years old and had retired. The Wife was forty-seven; she was employed part time as a merchandiser for a greeting card company.

The only contested issues before the trial court related to the equitable distribution of a building located in Queens, New York, referred to as the "Queens building," the Husband's Roth IRA, and some other retirement funds. We need only address the Wife's argument concerning the trial court's treatment of the reduction in the mortgage indebtedness on the Queens building.

## II. DISCUSSION

The Husband purchased the Queens building in 1998. This building had two residential apartments and a commercial space. The Queens building remained

titled in the Husband's name alone throughout the marriage. The Husband testified that the value of the Queens building at the time of the parties' marriage in 2007 was $900,000. Shortly before the parties separated, the Husband sold the Queens building for $680,000. The Wife did not challenge the adequacy of the sales price, and she did not present any evidence concerning the value of the building. Based on the evidence presented, the trial court found that the Queens building did not appreciate in value during the term of the marriage.

The Queens building was subject to a mortgage. During the marriage, the mortgage indebtedness was reduced by the amount of $23,651.16. It was undisputed that the payments on the mortgage were made from marital funds. Based on these facts, the Wife contended that she was entitled to an equitable distribution in the amount of the reduction in the mortgage indebtedness on the Husband's nonmarital property that had been made from marital funds. The trial court rejected the Wife's claim. The trial court reasoned that since there was no appreciation in the value of the Queens building during the term of the marriage, the amount of the reduction in the mortgage indebtedness during the marriage paid from marital funds "becomes moot and [is] no[t] compensable" to the Wife.

On appeal, the Wife argues that the use of marital funds to pay down the mortgage on the Queens building—the Husband's nonmarital asset—renders the enhancement in the value of the property a marital asset that is subject to equitable distribution. See § 61.075(6)(a)(1)(b), Fla. Stat. (2012) ("As used in this section: 'Marital assets and liabilities' include: [t]he enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the

contribution to or expenditure thereon of marital funds or other forms of marital assets, or both."); Mitchell v. Mitchell, 841 So. 2d 564, 567 (Fla. 2d DCA 2003); Cornette v. Cornette, 704 So. 2d 667, 668 (Fla. 2d DCA 1997); Straley v. Frank, 612 So. 2d 610, 612 (Fla. 2d DCA 1992); Ballard v. Ballard, 158 So. 3d 641, 643 (Fla. 1st DCA 2014); Cole v. Roberts, 661 So. 2d 370, 372 (Fla. 4th DCA 1995).

In response, the Husband argues that the evidence showed that the value of the Queens building had decreased during the marriage instead of appreciating. Therefore, even though the use of nonmarital assets to make the mortgage payments reduced the amount of the mortgage indebtedness, there was—in the aggregate—no appreciation in the value of the property. The Husband claims that in the absence of any evidence of appreciation in the value of the property, the Wife had no claim to a credit for one-half of the amount of the reduction in the mortgage that encumbered the property. The Husband's argument is not supported either by section 61.075 or this court's precedent, and we reject it.

In Dwyer v. Dwyer, 981 So. 2d 1254, 1256 (Fla. 2d DCA 2008), the husband owned a commercial building that was his nonmarital asset. The building was subject to a mortgage. Id. Shortly after the parties' marriage, the husband proposed to satisfy the mortgage on his commercial building by refinancing the marital home. Id. The wife agreed to refinance the marital home by taking out a mortgage in her own name. Id. The parties used a portion of the proceeds of the refinancing—$112,000—to pay the mortgage on the husband's nonmarital building. Id.

During the proceedings to dissolve the parties' marriage in Dwyer, the wife asked for a credit of $56,000, one-half of the amount of the marital funds that had been

- 4 -

used to pay the mortgage on the husband's building.  Id.  The trial court characterized the wife's contribution as a gift and rejected her claim, noting "that there was no competent evidence as to whether the payoff of the mortgage enhanced that asset's value."  Id.  The trial court's finding in Dwyer concerning the lack of proof of an increase in the commercial building's value is similar to the trial court's finding in this case that the Queens building had depreciated in value instead of appreciating.

On appeal in Dwyer, this court agreed with the wife's argument and reversed the trial court's determination that the wife was not entitled to half of the amount of marital funds used to pay down the mortgage, reasoning as follows:

> [W]e conclude that the equitable distribution must be reversed because the trial court did not properly account for the fact that marital funds were used to pay off the mortgage on the Husband's nonmarital, commercial property.  In Cornette v. Cornette, 704 So. 2d 667, 668 (Fla. 2d DCA 1997), this court held that "[t]he marital funds used to pay down the mortgage on the property, however, enhanced the value of the nonmarital asset; thus, the resulting equity in the property is a marital asset subject to equitable distribution."  See also Perrin v. Perrin, 795 So. 2d 1023, 1024 (Fla. 2d DCA 2001) (quoting Cornette).
>
> . . . .
>
> The payoff of the mortgage on the Husband's nonmarital, commercial property with marital funds obtained by refinancing the marital home enhanced the equity value of the property.  As such, the trial court erred by not accounting for the increased equity as a marital asset subject to equitable distribution.  Therefore, we reverse and remand for the trial court to reconsider the equitable distribution scheme after taking into account the enhancement of the Husband's property through the use of marital funds.

Id. at 1256-57 (emphasis added).

Here, as in <u>Dwyer</u>, the pay down on the mortgage on the Queens building enhanced the equity value of the Husband's nonmarital asset. The Husband's argument to the contrary seems to proceed from a confusion of the concept of the appreciation in the overall value of an asset with an enhancement in its equity value. Granted, the Queens building did not appreciate in value during the term of the parties' marriage, but the use of marital funds to pay down the mortgage obviously caused an enhancement in the value of the Husband's equity in the property. Absent the reduction in the amount of the mortgage indebtedness through the payment of marital assets, the net proceeds that the Husband realized from the sale of the Queens building would have been reduced by an amount equal to the pay down of the debt. It follows that the resulting increase in the equity value of the Queens building was a marital asset subject to equitable distribution.

The trial court relied on the Florida Supreme Court's decision in <u>Kaaa v. Kaaa</u>, 58 So. 3d 867 (Fla. 2010), in support of its theory that the Wife was not entitled to a credit for the pay down on the mortgage because there was no proof of any appreciation in the value of the Queens building during the term of the marriage. This reliance was misplaced. In <u>Kaaa</u>, the supreme court addressed a question involving passive, market-driven appreciation in a nonmarital asset, not the payoff of or a reduction in the amount of a mortgage on the property.[1] As the First District has

---

[1]The supreme court framed the question before it in <u>Kaaa</u> as follows: "When a marital home constitutes nonmarital real property, but is encumbered by a mortgage that marital funds service, is the value of the passive, market-driven appreciation of the property that accrues during the course of the marriage deemed a marital asset subject to equitable distribution under section 61.075(5)(a)(2), Florida Statutes (2007)." 58 So. 3d at 869. As the court noted, the legislature amended section 61.075 in 2008 to create a new subsection (5). The language that previously appeared

previously observed, the court's decision in Kaaa did not affect the general rule that "[w]hen marital assets are used during the marriage to reduce the mortgage on non-marital property, the increase in equity is a marital asset subject to equitable distribution." Ballard, 158 So. 3d at 643.

### III. CONCLUSION

In fairness, we note that the First District's decision in Ballard was not released until after the trial court heard and decided this case. However, the trial court erred in failing to give the Wife a credit for one-half of the amount by which the use of marital funds to pay down the mortgage reduced the indebtedness on the Queens building during the marriage. For this reason, we reverse the equitable distribution and remand for the trial court to enter an amended final judgment making an appropriate correction to the equitable distribution between the parties. In all other respects, the final judgment is affirmed.

Affirmed in part, reversed in part, and remanded.


CASANUEVA and SALARIO, JJ., Concur.

---

in section 61.075(5)(a)(2) now appears—without substantial change—in section 61.075(6)(a)(1)(b). Kaaa, 58 So. 3d at 870 n.2.