NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

SERAP FREDERICK,                          )
                                          )
          Appellant,                      )
                                          )
v.                                        )          Case No. 2D17-3668
                                          )
TIMOTHY FREDERICK,                        )
                                          )
          Appellee.                       )
                                          )
_____    )

Opinion filed September 14, 2018.

Appeal from the Circuit Court for Pasco
County; Kimberly A. Campbell, Judge.

Allison M. Perry of Florida Appeals, P.A.,
Tampa, for Appellant.

Russell G. Marlowe of Russell G. Marlowe,
PA, New Port Richey, for Appellee.


VILLANTI, Judge.

          Serap Frederick (the Wife) appeals the amended final judgment that

dissolved her marriage to Timothy Frederick (the Husband), raising four issues. First,

the Wife argues that the trial court erred in determining the equitable distribution and in

finding that the mortgage on the property was a marital debt. Second, the Wife

contends that the trial court failed to treat the reduction in the nonmarital property's

mortgage debt as a marital asset. Third, the Wife claims that a $23,000 debt should not

have been classified as a marital debt. Fourth, the Wife asserts that she was entitled to an award of her attorney's fees and costs.

On appeal, the Wife's appellate counsel advised this court that the final hearing was not reported. Although the absence of a transcript of a final hearing is "usually fatal" to an appellant's claims, Esaw v. Esaw, 965 So. 2d 1261, 1264 (Fla. 2d DCA 2007) (citations omitted), "this court may review the final judgment for an error of law apparent on the face of the judgment," Mobley v. Mobley, 18 So. 3d 724, 725 (Fla. 2d DCA 2009) (citing Silverman v. Silverman, 940 So. 2d 615, 616 (Fla. 2d DCA 2006)). For the reasons discussed below, the first two issues have merit and require reversal under this standard. But, because the absence of a transcript precludes this court from conducting a substantive review of the remaining issues, we conditionally affirm as to issues three and four.

After being married for nine years, the Husband filed a petition for dissolution of marriage and the Wife filed a counterpetition. Following the final hearing, the trial court entered a detailed final judgment of dissolution that reflected numerous factual findings and conclusions of law. The Wife filed a motion for rehearing, after which the trial court entered an amended final judgment.

According to the amended final judgment, there was no dispute that the Husband owned a house known as the Mitchell Ranch property prior to the parties' marriage. The house was not subject to any mortgage at the time the parties married. During their marriage, the parties obtained a mortgage on the home in the amount of $73,339; however, the Wife's name was not on the promissory note or the deed. Both the Husband and Wife testified that the mortgage was taken out to improve the Mitchell

Ranch property. In the amended final judgment, the trial court found that the Husband spent approximately $16,000 of the funds from the mortgage to remodel the floors, windows, and back porch of the property. The Wife testified that she did not receive any money from the mortgage. There were no findings as to what became of the remaining amount and specifically no evidence supporting the funds being used for marital purposes. Hence, we are left with the implication that these funds do not currently exist outside of the equitable distribution, or are in the exclusive possession of the Husband but not the Wife.

According to the amended final judgment, the Husband's appraiser testified that the property was valued at $95,000 when the parties were married and $45,000 at the time the Husband filed for the dissolution of the marriage. The mortgage balance was $65,978.03 when the petition was filed and there was a $7360.97 pay down of the mortgage during the marriage. Both the Husband and Wife's appraisers testified that the value of the property had increased to $63,000 and $71,000, respectively, a few months before the final hearing. However, as was its prerogative, the trial court used its discretion to apply the date of filing value in determining equitable distribution.

Ultimately, the trial court determined that the Mitchell Ranch property was the Husband's nonmarital property, but that the mortgage on the property was a marital debt. Additionally, the trial court held that the Wife was not entitled to a credit for the pay down of the mortgage because the property had decreased in value during the marriage, relying on Kaaa v. Kaaa, 58 So. 3d 867 (Fla. 2010). Specifically, the trial

court held that "as a result of the negative equity being greater than the [Wife]'s credit for the pay down of the mortgage, there [was] no amount to distribute to the [Wife]."

In the original final judgment, the Wife was not required to make an equalizing payment because the trial court determined that the equitable distribution plan left the parties "in similar net positions given that the [Husband] is solely liable for the mortgage (a marital debt) on the nonmarital Mitchell Ranch property . . . ." However, after the Wife's motion for rehearing, the trial court sua sponte changed the value of the Mitchell Ranch property from $45,000 to $0 and ordered the Wife to make an equalizing payment to the Husband in the overall amount of $25,185. Importantly, the court made no additional findings to explain this dramatic change. Thus, in doing so, the trial court committed legal error.

We review a trial court's determination as to whether a mortgage is a marital debt using the de novo standard of review. Dravis v. Dravis, 170 So. 3d 849, 852 (Fla. 2d DCA 2015). The factual findings necessary for such legal conclusions must be based on competent, substantial evidence. Id. The trial court's equitable distribution decisions are reviewed for an abuse of discretion. Id. at 853. But the trial court's failure to apply the correct legal rule is reviewed as a matter of law. Green v. Green, 788 So. 2d 1083, 1085 (Fla. 1st DCA 2001) (citing Canakaris v. Canakaris, 382 So. 2d 1197, 1202 (Fla. 1980)).

"Generally stated, equitable distribution of marital assets is a three-step process: (1) identification of marital and nonmarital assets, (2) valuation of marital assets, and (3) distribution of marital assets as statutorily prescribed." Keurst v. Keurst, 202 So. 3d 123, 127 (Fla. 2d DCA 2016). The trial court must support each step with

findings that identify the marital and nonmarital assets and liabilities and set forth "the value of each marital asset, the responsibility for each liability, and the factors supporting their distribution." Id. (citing § 61.075(3), Fla. Stat. (2013)).

Under section 61.075, nonmarital assets and liabilities include "[a]ssets acquired and liabilities incurred by either party prior to the marriage, and assets acquired and liabilities incurred **in exchange** for such assets and liabilities." § 61.075(6)(b)(1) (emphasis added). See also Steiner v. Steiner, 746 So. 2d 1149, 1151 (Fla. 2d DCA 1999) (recognizing that properties purchased during the marriage with proceeds from the sale of nonmarital property acquired before the marriage are nonmarital assets "to the extent that their purchase prices were paid with proceeds that are traceable" to the sale of that premarital property). It is also important to note that a party that signs a mortgage but does not sign the accompanying note cannot be held liable beyond that party's interest in the property. See Flagstar Bank, FSB v. Hochstadt, 405 F. App'x 374, 377 (11th Cir. 2010) (holding that the Wife could not be held liable "over and beyond her interest in the property because she did not sign the accompanying notes"); ROSL, Inc. v. Des Jardins, 756 So. 2d 1078, 1079 (Fla. 4th DCA 2000) (holding that a third party is not liable where the third party does not sign the note). Thus, where a liability is incurred in exchange for a nonmarital asset that is directly traceable to one party and that party assumes full financial responsibility, an additional signatory cannot be liable beyond the interest that party has in the property.

In this case, the trial court made conflicting findings in support of designating the mortgage as a marital debt. Nothing in the amended final judgment refutes the Wife's testimony that she did not receive any portion of the funds. Both the

- 5 -

Husband and the Wife testified that the mortgage was taken out to improve the Mitchell Ranch property. Even though the trial court found that there was no evidence "of any substantial improvements paid with marital funds during the marriage," the court also found that the Husband used $16,000 of the mortgage funds to remodel the nonmarital property. The trial court further found that the Husband was solely responsible for the repayment of the note because the Wife was not a signatory to the promissory note.

Often a lending institution will require a mortgage to be joined by a spouse in order to place a valid lien on the property in favor of the lending institution. The mere act of signing the mortgage, and thereby waving any potential spousal claim in the event of foreclosure, does not impute liability under the note. See Sudhoff v. Fed. Nat'l Mortg. Ass'n, 942 So. 2d 425, 427 (Fla. 5th DCA 2006) ("[B]ecause of its homestead status, Fannie Mae required Mrs. Sudhoff to join in the mortgage, although not the note. . . . The mortgage made clear that because Mrs. Sudhoff did not sign the note, she was not liable for the debt, but was pledging her interest in the subject property to secure the debt."). Therefore, without evidence the proceeds were used for some marital purpose, it is of no moment in this case that the Wife joined in the mortgage. Under this circumstance, joinder in the mortgage is an accommodation only, and as a matter of law cannot ipso facto determine that the mortgage is a marital liability.

Additionally, the trial court made no findings to support changing the value of the Mitchell Ranch property from $45,000 to $0. In fact, the trial court's ultimate determination that the Mitchell Ranch property had no value was directly contradicted by the parties' appraisers. See Suk v. Chang, 189 So. 3d 224, 226 (Fla. 2d DCA 2016) (holding that dissolution judgments that contain internal inconsistencies must be

- 6 -

reversed so the inconsistencies can be corrected); Heiny v. Heiny, 113 So. 3d 897, 900-01 (Fla. 2d DCA 2013) (reversing as to the property value amount where the undisputed testimony did not support the trial court's finding); Pinder v. Pinder, 750 So. 2d 651, 653 (Fla. 2d DCA 1999) (reversing the trial court's conflicting valuation of the nonmarital assets and requiring the trial court to make appropriate findings on remand). This inconsistency is apparent on the face of the judgment and requires reversal.

In summary, the trial court's factual findings do not support it's characterization of the mortgage on the nonmarital property as a marital debt. Furthermore, the trial court's determination that the Mitchell Ranch property had no value was clearly erroneous. We therefore reverse the trial court's determination that the mortgage on the Mitchell Ranch property was marital and remand to recalculate the equitable distribution in accordance with this opinion. In making these corrections, the trial court will need to recalculate any equalizing payment and may consider any new evidence concerning the status of the Mitchell Ranch property. See Suk, 189 So. 3d at 226.

Concerning the second issue, it is apparent on the face of the record that the trial court erroneously applied Kaaa to reach its determination that the Wife was not entitled to credit for any portion of the $7360.97 pay down of the Mitchell Ranch mortgage. In fact, Kaaa does not apply at all to the circumstances of this case. The trial court's misapplication of Kaaa to determine the pay down value of the Mitchell Ranch property also requires reversal.

As we explained in Somasca v. Somasca, 171 So. 3d 780, 782-83 (Fla. 2d DCA 2015), Kaaa addressed "passive, market-driven appreciation in a nonmarital asset,

not the payoff of or a reduction in the amount of a mortgage on the property." See also Ballard v. Ballard, 158 So. 3d 641, 643 (Fla. 1st DCA 2014) ("The only question at issue in Kaaa was whether passive appreciation in the value of non-marital property by market forces alone constitutes a marital asset subject to distribution . . . ."). Kaaa did not affect the general rule that when marital assets are used to reduce the mortgage on nonmarital property, the resulting equity increase is considered a marital asset. Ballard, 158 So. 3d at 643.

In Somasca, the trial court relied on Kaaa to determine that the wife was not entitled to a credit for the pay down on the mortgage because there was no proof of any appreciation in the value of the property during the marriage. Somasca, 171 So. 3d at 782. The husband in Somasca argued that there was no appreciation because the property had decreased in value during the marriage; however, this court rejected that argument, noting that the husband's argument confused "the concept of the appreciation in the overall value of an asset with an enhancement in its equity value." Id. at 781-82. This court further explained:

> Granted, the [property] did not appreciate in value during the term of the parties' marriage, but **the use of marital funds to pay down the mortgage obviously caused an enhancement in the value of the Husband's equity in the property**. Absent the reduction in the amount of the mortgage indebtedness through the payment of marital assets, the net proceeds that the Husband realized from the sale of the [property] would have been reduced by an amount equal to the pay down of the debt. It follows that the resulting increase in the equity value of the [property] was a marital asset subject to equitable distribution.

Id. at 782 (emphasis added).

In Kaaa, the Florida Supreme Court found that paying the mortgage was a prerequisite to enjoying the passive appreciation of the property. 58 So. 3d at 871. While the passive appreciation of a nonmarital asset may be regarded as a marital asset under certain circumstances, such as in Kaaa, the converse is not true. That is, the passive depreciation of a nonmarital asset is not a marital liability to be automatically shared equally by the nonowning spouse. Unlike in the first scenario, the depreciated amount, due only to market forces, is irrelevant because the nonmarital property is excluded from the equitable distribution scheme.

Here, as in Somasca, the trial court erred in failing to give the Wife a credit for one-half of the $7360.97 of marital funds used to pay down the Mitchell Ranch mortgage. Although the trial court has discretion to use the date of filing valuation to determine that the property had depreciated in value, the court was not permitted to disregard the equity increase that occurred during the marriage. There is no question that the marital funds in this case were used to pay down the mortgage by $7360.97, resulting in an increase in the value of the Husband's equity in the property. Therefore, we reverse and remand to include the mortgage pay down in the equitable distribution award and to recalculate the equitable distribution as necessary.

As to the third and fourth issues, because the final hearing was not transcribed, we are unable to determine whether the trial court abused its discretion. See Applegate v. Barnett Bank of Tallahassee, 377 So. 2d 1150, 1152 (Fla. 1979) ("Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it."). Nevertheless, because this case requires a major adjustment to the equitable

distribution scheme, the trial court must reconsider both the alimony and the denial of attorney's fees and costs after it has recalculated the financial resources of the parties. See Betts v. Betts, 235 So. 3d 958, 959 (Fla. 2d DCA 2017) (holding that, in recalculating the equitable distribution, "[t]he trial court may readdress any portion of the equitable distribution or related alimony calculations as necessary"); Orloff v. Orloff, 67 So. 3d 271, 275 (Fla. 2d DCA 2011) (requiring the trial court to reconsider the award for both alimony and attorney's fees and costs after recalculating the equitable distribution)). Upon remand, if the trial court determines that either party is required to make an equalizing payment, the court must also include findings as to that party's ability to pay. See Abramovic v. Abramovic, 188 So. 3d 61, 64 (Fla. 4th DCA 2016) (reversing the trial court's imposition of an equalizing payment plan where the record was "devoid of evidence supporting the former wife's ability to pay").

For the above reasons, we reverse the equitable distribution and remand for the trial court to enter an amended judgment in accordance with this opinion. In all other respects, the amended final judgment is affirmed.

Affirmed in part, reversed in part, and remanded with directions.

KELLY and KHOUZAM, JJ., Concur.