[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 09-14798

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 13, 2010
JOHN LEY
CLERK

D.C.  08-80795-CV-DTKH

FLAGSTAR BANK, FSB,
a federally chartered savings bank,

Plaintiff-Counter-
Defendant-Appellee,

versus

A. M. HOCHSTADT,

Defendant-Counter-
Claimant,

TEREZ HOCHSTADT,

Defendant-Counter-
Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 13, 2010)

Before CARNES, FAY and SILER,* Circuit Judges.

_____

*Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting
by designation.

PER CURIAM:

Terez Hochstadt ("Terez") appeals the district court's order granting summary judgment in favor of Flagstar Bank ("Flagstar") and denying her cross-motion for summary judgment. The court held Terez personally liable for sums secured under two mortgages, to which she was a signatory, even though she did not sign the accompanying notes. After careful review of the record, counsels' briefs, and the benefit of oral argument, we reverse.

## I. BACKGROUND

Appellant Terez and her husband, Albert Hochstadt ("Albert") owned residential property in Boca Raton, Florida. To refinance an existing note and mortgage on the property, Albert signed a February 17, 2006 Adjustable Rate Note in the amount of $4,300,000 secured by an Adjustable Rate Mortgage. In addition, to acquire a home equity line of credit on the property, Albert signed a May 4, 2006 Home Equity Note in the amount of $500,000 secured by another Home Equity Mortgage. Terez signed both mortgages, but did not sign either note. Payments due on the notes were in arrears, and Flagstar instituted this mortgage foreclosure action.

Flagstar sought judgment against Albert, as the sole signer of the Notes, for the sums due under the two notes, interest, late fees, title search expenses, attorneys' fees, and costs. Additionally, Flagstar sought judgment against both Albert and Terez, as

signers of the mortgages, for foreclosure of the mortgages, sale of the property, and deficiencies. Terez denied that Flagstar was entitled to the relief it sought against her under the mortgages. The parties filed cross-motions for summary judgment: Flagstar filed its motion regarding breach of the notes and foreclosure of the mortgages, while Terez filed her motion on the issue of her personal financial liability.

The district court granted Flagstar's motion for summary judgment and denied Terez's motion. The district court held that, as a signatory to the mortgages, Terez was liable for various payments other than repayment of the loan, including taxes, assessments, property insurance premiums, Flagstar's costs to defend its interest in the property, and fees relating to the defaults. Subsequently, the district court entered a Final Judgment holding Terez liable for $107,701.01, primarily based upon an escrow overdraft comprised of property insurance premiums and real estate taxes. The Final Judgment also directed that if the amounts due were not paid, the United States Marshal was to publish a notice of sale pursuant to 28 U.S.C. § 2002 and sell the property to the highest bidder for cash pursuant to 28 U.S.C. § 2001. On September 30, 2009, the foreclosure sale took place and Flagstar purchased the property for $100. Terez then filed this timely appeal.

## II. DISCUSSION

We review the district court's grant of summary judgment *de novo,* considering all the evidence and factual inferences in the light most favorable to the non-moving party. See Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 956 (11th Cir. 2009). Under Fed. R. Civ. P. 56(c), a motion for summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

The issue of Terez's liability to Flagstar for the escrow overdraft hinges on the interpretation of Section 13 of these mortgages. Under the principles of contract law, "where the language of a contract is unambiguous, the legal effect of that language is a question law." Orkin Exterminating Co., Inc. v. F.T.C., 849 F.2d 1354, 1360 (11th Cir. 1988). The "question of whether a contractual ambiguity exists is also a question of law which the court may resolve summarily." Int'l Bhd. of Boilermakers v. Local Lodge D111, 858 F.2d 1559, 1561 (11th Cir. 1988) (citing Orkin, 849 F.2d at 1360; Freeman v. Continental Gin Co., 381 F.2d 459, 465 (5th Cir. 1967)). A contract term is ambiguous if it is reasonably susceptible to more than one interpretation. Orkin, 849 F.2d at 1360. However, the mere assertion that a contractual ambiguity exists, or a dispute over contractual terms, does not create such

4

an ambiguity.  Id.  (citing Vreeland v. Federal Power Comm'n, 528 F.2d 1343, 1351 (5th Cir. 1976)).

Section 13 of both the Adjustable Rate Mortgage and the Home Equity Mortgage contain similar language limiting the liability of a "co-signer" of the mortgage who does not sign the accompanying note.

Section 13 of Adjustable Rate Mortgage states:

> Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument.

Section 13 of the Home Equity Mortgage states:

> All duties under this Security Instrument are joint and individual. If the Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does

5

not agree to be personally liable on the Secured Debt.

Flagstar contends, and the district court held, that these sections do not relieve Terez as a "Borrower" or "Mortgagor" from paying additional sums independent of the notes, which includes the $107,701.01 escrow overdraft comprised primarily of property insurance premiums and real estate taxes. Although Terez did not sign the notes and therefore is "not personally obligated to pay the sums secured by this Security Instrument," Flagstar contends that the escrow overdraft items are not "sums secured by" the mortgages. It contends that the items, including insurance premiums and taxes, are independent obligations that, although appearing within other sections of the mortgages, (for example: Sections 4 and 5 of the Adjustable Rate Mortgage), are not components of the loan. According to Flagstar, the loans are the sole "sum secured by" the mortgages. We disagree.

Section 13 of these mortgages unambiguously relieves Terez of any financial liability for the escrow overdraft because the escrow overdraft items are "sums secured by" these mortgages. Section 13 of both instruments clearly state that a borrower who signs the mortgage without also signing the note exposes only the borrower's interest in the property and is not obligated in any other way for items secured by the mortgage. The mortgages also make clear that the escrow overdraft items constitute items secured by the instrument. In the Adjustable Rate Mortgage,

the provision regarding "Transfer of Rights in the Property" provides that the instrument secures the performance of the borrower's covenants under the instrument:

> This Security Instrument secures to the Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

Similarly, in the Home Equity Mortgage, the provision entitled "Secured Debt and Future Advances" defines "Secured Debt" as "[t]he initial indebtedness secured by this Security Instrument is the debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below...." Additionally, the "Mortgage Covenants" section in the Home Equity Mortgage states that "Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and Security Instrument."

Pursuant to these provisions, the mortgages secure both the loan and the performance of all covenants and agreements in them. Such covenants include paying escrow items, taxes, insurance, costs in defending interests in the property, and fees relating to a default. Thus, the mortgages secure payment of the escrow items and Terez cannot be held liable over and beyond her interest in the property because she did not sign the accompanying notes.

7

Accordingly, we reverse the district court's entry of summary judgment in favor of Flagstar and remand with instructions to enter judgment in favor of Terez for anything other than her interest in the property.[1]

REVERSED and REMANDED with instructions.

---

[1]Terez raises other issues on this appeal, however, in light of our ruling in her favor today, they are moot.